Approved: _[signature] Thane Rehn_
THANE REHN/CECILIA VOGEL
Assistant United States Attorneys

Before: THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

------------------ x

**20 MAG 8520**

UNITED STATES OF AMERICA

- v. -

SHERZOD RASULOV,
ARTUR SATTAROV,
SOJIDA BAKOEVA, and
SHAKHZOD YUNUSOV,

Defendants.

------------------ x

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 371, 1344,
and 1960

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

ZACHARY CARROLL, being duly sworn, deposes and says that he is a Special Agent with Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**

(Conspiracy to Operate an Unlicensed
Money Transmitting Business)

1. From at least in or about November 2018, up to and including the present, in the Southern District of New York and elsewhere, SHERZOD RASULOV, ARTUR SATTAROV, SOJIDA BAKOEVA, and SHAKHZOD YUNUSOV, the defendants, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

2. It was a part and object of the conspiracy that SHERZOD RASULOV, ARTUR SATTAROV, SOJIDA BAKOEVA, and SHAKHZOD YUNUSOV, the defendants, and others known and unknown, knowingly conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business affecting interstate and foreign commerce, which (a) was operated without an appropriate money transmitting license in a State where such operation was punishable as a misdemeanor and a felony under State law, and (b) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, to wit, RASULOV, SATTAROV, BAKOEVA, and YUNUSOV used companies they owned and controlled in Brooklyn, New York, to transmit money from, through, and out of the United States, including money transmitted through the Southern District of New York, without an appropriate state license, which conduct was punishable as a misdemeanor under New York law, and without meeting the Federal registration requirements set forth for money transmitting businesses.

## Overt Acts

3. In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York:

    a. On or about February 24, 2020, SHERZOD RASULOV, the defendant, exchanged Whatsapp messages with a person in Manhattan, New York, to arrange a transfer of $30,000 in cash.

    b. On or about February 26, 2020, ARTUR SATTAROV, the defendant, sent a wire transfer of $18,000 to a bank account held in Manhattan, New York.

    c. On or about February 26, 2020, SOJIDA BAKOEVA, the defendant, wrote a check for $11,400 payable to a bank account held in Manhattan New York.

    d. On or about March 5, 2020, SHAKHZOD YUNUSOV, the defendant, entered a bank branch in Manhattan, New York, and transferred $31,360 from one bank account to another.

(Title 18, United States Code, Section 371.)

2

## COUNT TWO

(Bank Fraud)

4. From at least in or about September 2019 up to and including the present, in the Southern District of New York and elsewhere, ARTUR SATTAROV, the defendant, did knowingly execute and attempt to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises, to wit, SATTAROV knowingly made, and aided and abetted the making of, material misrepresentations to a federally insured financial institution and others in order to deceive that financial institution into allowing a company operated by SATTAROV to operate and process financial transactions through the institution, and in doing so, obtained and attempted to obtain moneys, funds, and property owned by and under the custody and control of such financial institutions.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE

(Bank Fraud)

5. From at least in or about September 2019 up to and including the present, in the Southern District of New York and elsewhere, SOJIDA BAKOEVA, the defendant, did knowingly execute and attempt to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises, and did aid and abet the same, to wit, BAKOEVA knowingly made material misrepresentations to a federally insured financial institution and others in order to deceive that financial institution into allowing a company operated by BAKOEVA to operate and process financial transactions through the institution, and in doing so, obtained and attempted to obtain moneys, funds, and property owned by and under the custody and control of such financial institutions.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT FOUR

(Bank Fraud)

6. From at least in or about November 2018 up to and including the present, in the Southern District of New York and elsewhere, SHAKZHOD YUNUSOV, the defendant, did knowingly execute and attempt to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises, and did aid and abet the same, to wit, YUNUSOV knowingly made material misrepresentations to a federally insured financial institution and others in order to deceive that financial institution into allowing a company operated by YUNUSOV to operate and process financial transactions through the institution, and in doing so, obtained and attempted to obtain moneys, funds, and property owned by and under the custody and control of such financial institutions.

(Title 18, United States Code, Sections 1344 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Special Agent with FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, my conversations with witnesses and other law enforcement agents, and my review of bank records and websites. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

8. From my participation in this investigation, I have learned about a network of companies (the "Network") operating in and around the New York City area as unlicensed money transmitting businesses for the purpose of moving funds primarily from within the United States to companies located outside of the United States. In the course of the investigation, I and other law enforcement agents have reviewed

4

bank and other financial records, debriefed witnesses, conducted surveillance, and reviewed electronic evidence, and have learned that some of the Network companies have legitimate business operations in addition to being used as unlicensed money transmitting businesses, while other Network companies have no apparent legitimate business activity and exist solely as unlicensed money transmitting businesses. I have learned that, to perpetrate the scheme, the individuals who operate Network companies have made false statements to banks for the purpose of inducing the banks to open bank accounts in the name of the companies and execute transactions for the companies.

The Undercover Transactions

9. In the course of the investigation, I and other law enforcement officers have worked with an individual who has historically conducted business with companies in the Network ("CS-1"). CS-1 owns and operates a company in Manhattan, New York, has been arrested and criminally charged in the Southern District of New York with receipt of stolen property, and is cooperating with law enforcement in the hope of obtaining leniency. To date, information received from CS-1 has proven reliable and has at times been corroborated by independent sources of evidence.

10. Following CS-1's arrest, at the direction of law enforcement, CS-1 continued to maintain contact with individuals involved in the Network, including an individual not charged in this Complaint ("CC-1"), and SHERZOD RASULOV, the defendant, and recorded certain conversations and messages that CS-1 had with CC-1 and RASULOV. In the course of my involvement with CS-1's cooperation, I have learned, among other things, the following:

 a. In or around February 2020, CS-1 exchanged messages with CC-1 in which CS-1 represented, in substance and in part, that CS-1 was in possession of some cash and needed to move it into a bank account (the "Sting Bank Account"), which was held at a bank located in Manhattan, New York ("Bank-1"). CC-1 offered to facilitate this request, and provided CS-1 with a phone number, which law enforcement subsequently identified was used by RASULOV.

 b. CS-1 contacted RASULOV and exchanged Whatsapp Messages in which RASULOV instructed CS-1, in substance and in part, to bring the cash from Manhattan, New York, to a retail store located in Brooklyn, New York (the "Store"), whereupon RASULOV would move it into the Sting Bank Account, retaining a percentage of the money as a fee.

5

c. On or about February 25, 2020, CS-1 went to the Store and physically gave RASULOV $30,000 in cash. After making this cash delivery, CS-1 identified a photograph of RASULOV as the person to whom CS-1 had given the cash.

d. On or around February 26, 2020, the Sting Bank Account received a wire transfer of $18,000 from a bank account in the name of a particular company ("Company-1" and the "Company-1 Bank Account"),[1] and a deposited check of $11,400 from a bank account owned by a second company ("Company-2" and the "Company-2 Bank Account"),[2] for a total of $29,400. The difference between the $30,000 in cash provided by CS-1 to RASULOV and the $29,400 deposited into the Sting Bank Account represented the agreed-upon fee owed to the money transmitting network for conducting the transaction.

e. On or about March 3, 2020, CS-1 again coordinated a cash drop with RASULOV via Whatsapp messages, and on March 4, 2020, CS-1 went to the Store to deliver cash to RASULOV. On this occasion, CS-1 carried covert audio and video recording equipment, as directed by law enforcement, and recorded a delivery of $32,000 in cash to RASULOV. I have reviewed the video recording, and have observed that a person appearing to be RASULOV took the cash from CS-1.

f. On or around March 5, 2020, the Sting Bank Account received a $31,360 transfer from a bank account in the name of a third company ("Company-3" and the "Company-3 Bank Account").[3] The difference between the $32,000 in cash provided by CS-1 to RASULOV and the $31,360 transferred to the Sting Bank Account represented the agreed-upon fee owed to the money transmitting network for conducting the transaction.

---

[1] The circumstances of this transfer, the background of Company-1, and the involvement of defendant ARTUR SATTAROV in each is described in more detail below in paragraphs 11 through 13.

[2] The circumstances of this transfer, the background of Company-2, and the involvement of defendant SOJIDA BAKOEVA in each is described in more detail below in paragraphs 14 through 17.

[3] The circumstances of this transfer, the background of Company-3, and the involvement of defendant SHAKHZOD YUNUSOV in each is described in more detail below in paragraphs 18 through 21.

6

## The SATTAROV Bank Account

11. From my review of records provided by the bank where the Company-1 Bank Account is held ("Bank-3"), I have learned the following, among other things:

   a. The Company-1 Bank Account was opened on or about September 12, 2019, by ARTUR SATTAROV, the defendant, who identified himself to Bank-3 as the president and owner of Company-1 and is the only signatory on the Company-1 Bank Account.

   b. At the time SATTAROV opened the Company-1 Bank Account, SATTAROV informed the bank that Company-1 was a real estate investment business, and provided an address in Fresh Meadows, New York, as the business address for Company-1 (the "Company-1 Address").

   c. Following the February 25, 2020, delivery of $30,000 in cash to defendant SHERZOD RASULOV, described above, on or about February 26, 2020, bank records indicate that SATTAROV went into a Bank-3 branch located in Brighton Beach, New York, and executed the wire transfer of $18,000 from the Company-1 Bank Account into the Sting Bank Account located in Manhattan, New York. SATTAROV did not inform Bank-3 that the transfer was part of a money transmitting arrangement, but instead falsely informed Bank-1 that the transfer was "trade related."

   d. Based on my review of account records for the Company-1 Bank Account, and on my training and experience, the transaction activity in the Company-1 Bank Account is inconsistent with the use of the Company-1 Bank Account for a real estate investment business. For instance, there are no apparent payroll expenses and there are no apparent real estate related payments or credits.

   e. Based on my review of account records for the Company-1 Bank Account, and my training and experience, the transaction activity in the Company-1 Bank Account indicates that the account is used for money transmitting activities. Specifically, the Company-1 Bank Account typically receives several deposits and makes an outgoing wire transfer for a similar amount as the deposits. For instance:

      i. Between November 20, 2019, and December 4, 2019, the Company-1 Bank Account received four deposits from a physical therapy clinic (the "Physical Therapy Clinic") and a

7

chiropractic clinic (the "Chiropractic Clinic") for a total amount of $39,895.99. On December 10, 2019, and December 13, 2019, the Company-1 Bank Account made two wire transfers for a total of $38,422. These wire transfers were made to a purported rubber company located in China that has been the recipient of wire transfers from other Network companies (the "Chinese Rubber Company") and a purported electronics wholesale company located in Texas.

        ii.        Between December 17, 2019, and December 30, 2019, the Company-1 Bank Account received six deposits from the Physical Therapy Clinic, the Chiropractic Clinic, and another company, totaling $48,412.10. On December 20, 2019, the Company-1 Bank Account made a wire transfer of $48,170 to a purported clothing wholesaler located in Manhattan, New York, that law enforcement has identified based on financial records as a Network company engaged in unlicensed money transmitting.

12.    I have reviewed records obtained from the New York Department of Labor, and have learned that Company-1 has no reported employers or contractors and did not report paying any wages in 2019.

13.    I and other law enforcement agents have conducted surveillance at the Company-1 Address, which is a single family residence. There were no signs of any business activity taking place at the location.

### The BAKOEVA Bank Account

14.    From my review of records provided by the bank where the Company-2 Bank Account is held ("Bank-2"), I have learned the following, among other things:

        a.        The Company-2 Bank Account was opened on or about September 14, 2019, by SOJIDA BAKOEVA, the defendant, who identified herself to Bank-2 as the CEO and owner of Company-2 and is the only signatory on the Company-2 Bank Account.

        b.        At the time BAKOEVA opened the Company-2 Bank Account, BAKOEVA informed Bank-2 that Company-2 was a transportation company serving medical offices with 18 employees, and provided an address in Brooklyn, New York, as the business address for Company-2 (the "Company-2 Address"). BAKOEVA further informed Bank-2 that the Company-2 Address was her home address and stated that she owned her home and had lived at the Company-2 Address for 14 years.

c. Following the February 25, 2020, delivery of $30,000 in cash by CS-1 to defendant SHERZOD RASULOV, described above, on or about February 26, 2020, a check in the amount of $11,400 was drafted payable from the Company-2 Bank Account to the Sting Bank Account, bearing the signature of BAKOEVA. I have reviewed surveillance photos obtained from Bank-1 and have seen that a person who appears to me to be ARTUR SATTAROV, the defendant, went into a Bank-1 branch on or about February 26, 2020, and deposited that check into the Sting Bank Account.

d. Based on my review of account records for the Company-2 Bank Account, and on my training and experience, the transaction activity in the Company-2 Bank Account is inconsistent with the use of the Company-2 Bank Account for a transportation business serving medical offices. For instance, there are no apparent payroll expenses and there are no apparent payments related to purchasing, maintaining, or fueling transportation vehicles.

e. Based on my review of account records for the Company-2 Bank Account, and my training and experience, the transaction activity in the Company-2 Bank Account indicates that the account is used for money transmitting activities. For instance:

i. On October 2, 2019, the Company-2 Bank Account received a $9,617.13 deposit from a physical therapy clinic. On October 2, 2019, BAKOEVA wrote a check from the Company-2 Bank Account for $12,000 payable to a company that, based on my review of financial records, I understand to be a Network company based on a similar pattern of deposits and withdrawals.

ii. On October 30, 2019, the Company-2 Bank Account received a $12,000 deposit from the Physical Therapy Clinic. On November 6, 2019, BAKOEVA wrote a check from the Company-2 Bank Account for $12,000 payable to a company that based on my review of financial records, I understand to be a Network company based on a similar pattern of deposits and withdrawals.

15. I have reviewed records obtained from the New York Department of Labor, and have learned that Company-2 has no reported employers or contractors and did not report paying any wages in 2019.

16. I and other law enforcement agents have conducted surveillance at the Company-2 Address, which is an apartment in

9

a building located in Brooklyn, New York. There were no signs of any business activity taking place at the location.

17. I have obtained property records pertaining to the Company-2 Address, and have learned that BAKOEVA is not the owner of that apartment. I have also obtained BAKOEVA's residential records from the New York Department of Motor Vehicles, and have learned that BAKOEVA has never listed her residence as the Company-2 Address. I have also obtained BAKOEVA's travel and immigration records, and have learned that at the time BAKOEVA opened the Company-2 Bank Account and informed Bank-2 that she had resided at the Company-2 Address for 14 years, BAKOEVA had only resided in the United States for less than eight years.

### The YUNUSOV Bank Account

18. From my review of records provided by Bank-1, the bank where the Company-3 Bank Account is held, I have learned the following, among other things:

    a. The Company-3 Bank Account was opened on or about November 20, 2018, by SHAKHZOD YUNUSOV, the defendant, who identified himself to Bank-1 as the president of Company-3 and is the only signatory on the Company-3 Bank Account.

    b. At the time the Company-3 Bank Account was opened, YUNUSOV informed Bank-1 that Company-3 was a courier service, and provided an address in Brooklyn, New York, as the business address for Company-3 (the "Company-3 Address").

    c. On or about March 5, 2020, Bank-1 records show that YUNUSOV entered a Bank-1 branch located in Manhattan, New York, presented his driver's license to the bank teller, and executed a transfer of $31,360 from the Company-3 Bank Account to the Sting Bank Account.

    d. Based on my review of account records for the Company-3 Bank Account, and on my training and experience, the transaction activity in the Company-3 Bank Account is inconsistent with the use of the Company-3 Bank Account for a courier service. For instance, the deposits into the Company-3 Bank Account tend to be large amounts inconsistent with the amounts usually spent on courier services, and the highest volume of withdrawals from the Company-3 Bank Account are large wire transfers to businesses located overseas, particularly in China.

e. Based on my review of account records for the Company-3 Bank Account, and my training and experience, the transaction activity in the Company-3 Bank Account indicates that the account is used for money transmitting activities. For instance:

i. On December 3, 2019, the Company-3 Bank Account received a $40,000 deposit from a pharmacy. On December 4, 2019, the Company-3 Bank Account wired $39,600 to the Chinese Rubber Company.

ii. On December 17, 2019, the Company-3 Bank Account received two deposits from two pharmacies for a total of $70,000. On December 18, 2019, the Company-3 Bank Account wired $69,300 to a Chinese company.

iii. In total, the Company-3 Bank Account wired more than $1 million to Chinese companies between November 2018 and February 2020, yet I have reviewed United States Customs and Border Protection records for Company-3 and have learned that Company-3 has no reported imports or exports.

19. I have reviewed records obtained from the New York Department of Labor, and have learned that Company-3 has no reported employers or contractors and did not report paying any wages in 2019.

20. I and other law enforcement agents have conducted surveillance at the Company-3 Address, which is an apartment in a building located in Brooklyn, New York. There were no signs of any business activity taking place at the location.

21. I have obtained property records pertaining to the Company-3 Address, and have learned that the apartment is leased to SHERZOD RASULOV, the defendant, who is defendant SHAKHZOD YUNUSOV's father, and to RASULOV's spouse.

WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of SHERZOD RASULOV, ARTUR SATTAROV, SOJIDA BAKOEVA, and SHAKHZOD YUNUSOV, the defendants, and that they be imprisoned or bailed, as the case may be.

s/ Zachary Carroll / OTW
Special Agent Zachary Carroll   Cred. No.
Federal Bureau of Investigation   27542

Sworn to before me this
12th day of August, 2020

THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK